**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

NICOLE R. JACKSON                                   CIVIL ACTION

VERSUS                                              NO. 19-12175

HILLER COMPANIES, INC.                              SECTION "B"(1)

<u>ORDER AND REASONS</u>

Before the Court is defendant's motion for summary judgment (Rec. Doc. 31). Plaintiff has filed an opposition in response (Rec. Doc. 33). Thereafter, both parties submitted supplemental replies (Rec. Docs. 38, 51, 55, and 63). For the following reasons,

**IT IS ORDERED** that the motion is **GRANTED, but only to dismiss** claims for defamation, negligence under the Louisiana Drug Testing Statute, La. Rev. Stat.§49:1001 *et seq.*, and the claim under the Louisiana Employment Discrimination Laws; and

**IT IS FURTHER ORDERED** that the motion is **DENIED but only to retain** the Americans with Disabilities Act of 1990 claims.

I.   <u>FACTS AND PROCEDURAL HISTORY</u>

This suit arises from an alleged wrongful termination of plaintiff, Nicole Jackson. *See* Rec. Doc. 1-2 (Plaintiff's Petition). Ms. Jackson is a former employee of defendant, Hiller Companies ("Hiller"), and worked in the defendant's New Orleans office from July 2015 until October 20, 2017. *Id.* According to plaintiff, on October 20, 2017, her manager, Steve Acreman, terminated her for pre-textual reasons, namely for violating the

1

defendant's drug testing policy, but the true reason for her termination was the plaintiff's perceived disability. *Id.*

Initially, plaintiff worked as a temporary service dispatcher and eventually became a full-time administrative assistant. *Id.* During her on-boarding to Hiller, plaintiff was required to submit to a pre-employment drug test. *Id.* Plaintiff claims it was during this drug test that she made Hiller aware of her medical conditions, namely Attention Deficit Hyperactivity Disorder (ADHD), anxiety, depression, and vertigo. Rec. Doc. 1-2. According to plaintiff, it was also during this time that she made Hiller aware of her prescription for amphetamines. *Id.* Plaintiff allegedly informed Hiller of her medical conditions and prescriptions through her company paperwork and communications with her manager, Steve Acreman, her supervisor, Jackie Cantrell, and the Human Resources Manager, Angela Davis. *Id.* Plaintiff further alleges she provided Hiller's corporate office with a copy of her prescriptions at the time of hiring. *Id.* She also contends that Ms. Cantrell was aware that her condition caused her dizziness, unsteadiness, imbalance and spatial disorientation, stumbling, slurred speech, difficulty walking and turning, and clumsiness. Rec. Doc. 1-2.

Over two years after being hired, on October 10, 2017 plaintiff arrived at Hiller unable to walk, stumbling, and exhibiting slurred speech. *See* Rec. Doc. 1-2; Rec. Doc. 33 at pg.

4. Suspecting plaintiff was under the influence of drugs and/or alcohol, plaintiff's manager, Steve Acreman, instructed plaintiff to report to BAL & Associates for a drug test. *See* Rec. Doc. 1-2; Rec. Doc. 33 at pg. 4.   Defendant alleges it was authorized to instruct plaintiff to submit to a drug test pursuant to Hiller's Substance Abuse Policy. *See* Rec. Doc. 31.   This policy allegedly states that employees reasonably suspected of being under the influence of drugs and/or alcohol must submit to a drug and alcohol test. *Id.*   Plaintiff's supervisor, Ms. Cantrell, drove plaintiff to the BAL testing facility. *See* Rec. Doc. 1-2.   Once plaintiff returned from her drug test, Mr. Acreman informed her that she could not return to work until she had a "fit for duty" note from her doctor. Rec. Doc. 33 at pg. 4. Plaintiff then drove herself to the office of Dr. Paul Spring who diagnosed her with migraines, vertigo, and nausea/vomiting. *See* Rec. Doc. 33.   Dr. Spring also provided plaintiff with a return to work certificate that stated plaintiff could return to work without any restrictions. *See* Rec. Doc. 31.   Plaintiff returned to work at Hiller the next day. *Id.*

On or about October 20, 2017, BAL contacted Hiller's Drug Program Manager and Director of Human Resources, Angela Davis, regarding plaintiff's drug test.   Rec. Doc. 31.   BAL informed Ms. Smith that the plaintiff tested positive for amphetamines. *Id.* According to Hiller, BAL's Medical Review Officer ("MRO") attempted to contact the plaintiff on about three occasions to

3

determine if she had an explanation for the positive test result. Rec. Doc. 31. However, because BAL's MRO was unable to reach plaintiff, the officer confirmed plaintiff's positive result in a signed declaration. *Id.*   Ms. Smith then informed Mr. Acreman of the plaintiff's positive test result. *Id.*   Thereafter, Mr. Acreman met with the plaintiff and informed her that she failed her drug and alcohol test and was being terminated for violating Hiller's Substance Abuse Policy. *Id.*   After being presented with a "Termination Interview Record/Checklist" to sign, plaintiff allegedly wrote on the form that she had ADHD and that "corporate" had a copy of her prescription. *Id.; see also* Rec. Doc. 33 at 14. Additionally, plaintiff attempted to provide Mr. Acreman with a copy of her prescription at the termination meeting but he refused to accept it. Rec. Doc. 33 at 14.

On July 9, 2019, plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans. Rec. Doc. 1-2.  Plaintiff asserted several claims against Hiller including: (1) wrongful termination in violation of the Americans with Disabilities Act of 1990 (ADA); (2) wrongful termination under Louisiana Employment Discrimination Laws; (3) wrongful termination based on the defendant's negligence in administering its drug testing program in violation of Louisiana's Drug Testing Statute; and (4) Defamation. *See Id*.  According to plaintiff, Hiller was aware of her medical conditions and her prescription for

amphetamines and choose to terminate her employment because it perceived that her disability would substantially limit her ability to perform her job. *See* Rec. Doc. 1-2. On August 15, 2019, Hiller removed the suit to federal court. Rec. Doc. 1.

On November 24, 2020, defendant filed the instant motion for summary judgment seeking dismissal of plaintiff's claims. Rec. Doc. 31. Defendant asserts plaintiff did not have a disability at the time of her termination; and thus, her disability claims must be dismissed. *See Id.* Additionally, defendant alleges that plaintiff's state law claims must be dismissed because they are both untimely and without merit. *See Id.* On December 1, 2020, plaintiff filed an opposition memorandum to the defendant's motion. Rec. Doc. 33. Subsequently, both parties supplied this Court with supplemental reply memoranda in support of their positions. Rec. Docs. 38, 51, 55, 63.

## II.  LAW AND ANALYSIS

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material

fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 912 F.3d 786, 792 (5th Cir. 2019).

## B. Plaintiff's Claim under Louisiana Employment Discrimination Laws

Plaintiff claims that Hiller violated the state disability discrimination statute, which provides that "no otherwise

qualified person with a disability shall, on the basis of a disability, be subjected to discrimination in employment." La. Rev. Stat. § 23:323.  Hiller, however, argues that this claim is prescribed.

Claims under La. Rev. Stat. § 23:323 are governed by the prescriptive period set forth in La. Rev. Stat. § 23:303(D). *See Lefort v. Lafourche Par. Fire Prot. Dist. No. 3,* 39 F. Supp. 3d 820 (E.D. La. 2014); *Nabors v. Metro. Life Ins. Co.*, CIV.A. No. 12-827, 2012 WL 2457694, at *3 (W.D.La. May 30, 2012). It reads:

> Any cause of action provided in this Chapter shall be subject to a **prescriptive period of one year**. However, this one-year period shall be **suspended during the pendency of any administrative review or investigation** of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than **six months**.

La. Rev. Stat. § 23:303(D). (Emphasis added). This one-year prescriptive period begins to run from the date of notice of termination. *Eastin v. Entergy Corp.*, 865 So.2d 49, 54 (La. 2004). Additionally, both the Fifth Circuit and this Court have consistently recognized that Section 23:303(D) provides for a maximum prescriptive period of eighteen (18) months. *See, e.g., Williams v. Otis Elevator Co.*, 557 Fed.Appx. 299, 302 (5th Cir. 2014) ("The Louisiana anti-discrimination statute has a prescriptive period of one year, which can be suspended for a maximum of six months during the pendency of a state or federal

administrative investigation."); *Lefort v. Lafourche Par. Fire Prot. Dist. No. 3*, 39 F. Supp. 3d 820, 825 (E.D. La. 2014) ("Consequently, the Louisiana disability discrimination statute requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim."); *Bellow v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 913 F. Supp. 2d 279, 289 (E.D. La. 2012) ("Therefore, the total amount of time that a plaintiff has to bring a claim under Louisiana Revised Statute [§] 23:322 is eighteen months.")

The incident forming the basis of plaintiff's claim for wrongful termination occurred on October 20, 2017. Therefore, plaintiff had a total of eighteen (18) months from that day to file a claim against Hiller for wrongful termination under the LEDL. Nonetheless, plaintiff did not file the current suit until July 9, 2019, which is more than twenty (20) months from the date plaintiff's cause of action arose. Accordingly, plaintiff's LEDL claim is prescribed on its face and therefore dismissed.

**C. Defamation**

Plaintiff's petition asserts a claim for defamation based on Hiller's comments during an unemployment benefits hearing before the Louisiana Workforce Commission. As basis she points to statements defendant made during the hearing that plaintiff "was unable to stand up straight, was running into walls, and doorways,"

"had slurred speech," and was terminated for violating Hiller's Substance Abuse Policy. Hiller asserts the defamation claim is prescribed because plaintiff was informed on or around January 11, 2018, that her claim for unemployment benefits was denied. Rec. Doc. 31 at pgs. 15-17.  Because defamation claims are subject to a one-year prescriptive period, defendant asserts the instant claim was untimely filed approximately nineteen (19) months after the alleged defamatory claim became actionable. *Id.*

Alternatively, defendant argues plaintiff's petition fails to satisfy all elements of a defamation claim. *Id.*  Plaintiff's opposition memorandum failed to address the latter argument. Instead, she now claims that the defamation claim arises out of statements Acreman made to a Mr. Francis, plaintiff's co-worker, in either late July or early August of 2018. *Id.*  According to the plaintiff, Acreman told Francis that plaintiff "was a mess and had to go." *Id.*  Plaintiff also claims that Acreman told Francis and other employees that plaintiff was terminated for failing a drug test. *Id.*  Plaintiff asserts these statements rise to the level of defamation.[1] Hiller filed a supplemental reply arguing the defamation claim based on the comments it made to the LWC should be dismissed because plaintiff failed to address Hiller's argument. Hiller also asserts plaintiff cannot raise new claims or

---

[1] Notably, the alleged statements to the co-worker are substantially the same statements made during the LWC hearing.

factual allegations for the first time in an opposition memorandum to the motion for summary judgment. It submits the new allegations do not satisfy all elements required to prove a *prima facie* case for defamation.

Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993). To maintain a defamation action under Louisiana law, a plaintiff must prove the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009). If any of the elements of the tort is lacking, the cause of action fails. *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139. Even if a plaintiff makes a *prima facie* showing of the essential elements of a defamation claim, a defendant may prevail by showing either that: (1) the statement was true, as truth is an absolute defense to defamation claims under Louisiana law; or (2) that the statements were protected by an absolute or qualified privilege. *Costello*, 864 So.2d at 141 (citing *Doe v. Grant*, 01-0175, at 9 (La.App. 4 Cir. 1/29/03), 839 So.2d 408, 416; *Arledge v. Hendricks*, 30,588, 4 (La.App. 2 Cir. 6/26/98), 715 So.2d 135, 139); *Wood v. Del Giorno*,

2006-1612 (La. App. 4 Cir. 12/19/07), 974 So. 2d 95, 98, *writ denied*, 2008-0151 (La. 3/14/08), 977 So. 2d 933 ("Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."); *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La.App. 2 Cir. 6/22/01), 792 So.2d 832, 835 ("Truth is an absolute defense to the action for defamation.").

1.   **Whether Plaintiff's Defamation Claim Arising from Hiller's Statements to the Louisiana Workforce Commission (LWC) is Prescribed**

Plaintiff's defamation claim based on statements Hiller made to the LWC is prescribed. Defamation claims are delictual in nature; and thus, are subject to a one-year prescriptive period. La. Civ. Code art. 3492; *see Clark v. Wilcox*, 928 So.2d 104, 111 (La.App. 1 Cir. 12/22/05) (citing *Wiggins v. Creary*, 475 So.2d 780, 781 (La.App. 1 Cir.1985), *writ denied*, 478 So.2d 910 (La.1985) ("Claims for defamation are delictual in nature and are subject to La. Civ. Code art. 3492's one-year prescriptive period, which commences to run from the day injury or damage is sustained.")). The prescriptive period begins to run from the date on which the injury or damage is sustained, even if the plaintiff only later realizes the full extent of his damages. *McIntyre v. Theodore*, No. CIV.A. 15-0544, 2015 WL 2250213 (E.D. La. May 13, 2015). For defamation claims, the one-year prescriptive period commences when

11

the plaintiff gains knowledge of the damage-causing publication by the defendant. *Clark*, 928 So.2d at 112. Under Louisiana law, the party asserting prescription bears the burden of proof, unless it is evident from the face of the pleadings that a claim is prescribed. *King v. Phelps Dunbar*, L.L.P., 743 So.2d 181, 188 (La.6/4/99).

As asserted in the complaint, the factual basis for the defamation claim is rooted in Hiller's statements before the Louisiana Workforce Commission. Given that the prescriptive period for this claim commences from the day the injury or damage was sustained, prescription began to run against the defamation claim when she gained knowledge of a resulting injury due to Hiller's alleged defamatory comments. On or around January 11, 2018, the LWC informed the plaintiff that her claim for unemployment benefits had been denied due to Hiller reporting plaintiff was terminated for violating its substance abuse policy. Therefore, the prescriptive period began to run from that date. Plaintiff had until January 11, 2019, to file the defamation claim. However, it was not filed until July 9, 2019 - eighteen months later.

### 2. Newly Asserted Statements Made for First Time in Opposition Memorandum

The law in this Circuit is well-settled that a plaintiff may not rely on new claims raised for the first time in an opposition to a motion for summary judgment. *Cutrera v. Bd. of Supervisors of*

*La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (emphasis added) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Amedee v. Shell Chem. LP-Geismer Plant*, 384 F. Supp. 3d 613 (M.D.La. 2019), *aff'd sub nom. Amedee v. Shell Chem., L.P.*, 953 F.3d 831 (5th Cir. 2020)(denying consideration of any facts, offered exhibits, or arguments pertaining to plaintiff's fitness for duty certification claim because she failed to plead such a claim in the complaint.)

Plaintiff pled claims for defamation and defamation *per se* in her original complaint. See Rec. doc. 1-2. Plaintiff seeks to rely upon additional factual basis for the defamation claim that were never initially pled in the complaint. The complaint references the following statements by defendant before the Louisiana Workforce Commission: "(Plaintiff) was unable to stand up straight, was running into walls, and doorways," "had slurred speech … [and] was terminated for violating Hiller's Substance Abuse Policy. For the first time in opposition to the instant summary judgment motion, plaintiff asserts her former manager made defamatory statements to co-workers after the LWC denied her claim for unemployment benefits. Acreman allegedly said "[she] was a mess and had to go … [and] terminated for failing a drug test." There is no dispute that plaintiff knew the latter information was substantially the same information that was reported to and relied

upon by the LWC to deny her claim for benefits. The defamation claim is neither timely nor properly shown.

### 3.    Whether Plaintiff Satisfied her Burden of Proof

An action in defamation does not lie from a statement of opinion based on the speaker's subjective view. *Brown v. Connor*, 03-282 (La.App. 5 Cir. 10/15/03), 860 So.2d 27, 30. Such a statement does not expressly state or imply the existence of underlying facts, and because falsity is an element of any defamation claim, a purely subjective statement can be neither true nor false. *Id.* Moreover, casual remarks made in informal conversation, even if they include unflattering words, do not constitute actionable defamation. *See St. Germain v. Coulon*, 04-531 (La. App. 5 Cir. 10/26/04), 887 So. 2d 608, 612; *Greene v. State ex rel. Dep't of Corrs.*, 21 So.3d 348, 352 (La. App. 1 Cir. 2009) (granting summary judgment because defendant's statement that plaintiff was a "pathological liar" was an expression of opinion); *Autry v. Woodall*, 493 So.2d 716, 718-19 (La. App. 2 Cir. 1986) (letter accusing plaintiff of being "vindictive" was expression of opinion and therefore not defamatory as a matter of law); *see also Heft v. Burk*, 304 So.2d 670 (La. 1974) (letter that accused plaintiff of being "unethical" merely expressed defendant's opinion that plaintiff was acting unethically by hiring personnel from other employment).

To support her argument that summary judgment should be denied, plaintiff provides the declaration of Mr. Francis in which he states that Mr. Acreman told him plaintiff was fired because "she was a mess and had to go." However, this declaration is not enough to preclude summary judgment because it does not satisfy plaintiff's burden of proof. Plaintiff was required to provide evidentiary support of: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of Hiller; and (4) a resulting injury. Plaintiff relies on a statement that was not defamatory. The statement "she is a mess and has to go" is purely subjective based on Acreman's expression of opinion. Further, it is uncontested that BAL reported that plaintiff failed a drug test. Because the truth is an absolute defense to defamation claims, plaintiff's defamation claim based on noted statements also fails. *See Hoffman v. Bailey*, 257 F. Supp. 3d 801 (E.D. La. 2017).

**Wrongful Termination Under Louisiana Drug Testing Statute**

Plaintiff claims Hiller violated the Louisiana Drug Testing Statute when it negligently administered its drug-testing program. According to her complaint, Hiller breached its duty to her when it failed to have the "necessary oversight, operating procedures, processes and methods in place." Rec. Doc. 1-2. Hiller asserts the state drug testing statute does not create a private cause of action. Rec. Doc. 31 at pgs. 14-15. Alternatively, Hiller argues

15

a private right of action, if any here, is prescribed. *Id.*
Plaintiff failed to address Hiller's arguments in her opposition.

Louisiana's drug-testing law grants employees a "right to
confidentiality" regarding "information received through the
employer's drug testing program and sets forth the circumstances
under which an employee may assert a claim for 'defamation of
character, libel, slander, or damage to reputation or privacy.'"
*Sanchez v. Ga. Gulf Corp.* (*Sanchez II*), 2002-0904 (La. App. 1 Cir.
11/12/03), 860 So. 2d 277, 282-83 (emphasis omitted) (quoting La.
Stat. Ann. § 49:1012). However, the drug-testing statute does not
create a cause of action for wrongful termination. *Short v. Gusman*,
806 F. App'x 264 (5th Cir. 2020) (dismissing the plaintiff's claim
under the Louisiana Drug Testing Statute because the statute did
not create a cause of action); *see also Narcisse v. Turner Indus.
Grp., LLC*, No. CV 11-2659, 2012 WL 1565293, at *3-4 (E.D. La. Apr.
30, 2012) (noting that "Louisiana precedent only cites to
discrimination statutes as those that cannot be violated when
terminating an at-will employee," and concluding that Louisiana's
drug-testing statute did not create a cause of action).

Plaintiff's claim for wrongful termination under Louisiana's
drug testing statute must be dismissed. Plaintiff has effectively
abandoned this claim in failing to address the arguments Hiller
raised in its motion for summary judgment. See *Heisler v. Kean
Miller, LLP*, No. CV 21-724, 2021 WL 3852261 (E.D. La. Aug. 27,

2021) ("The Fifth Circuit has noted that a plaintiff's failure to defend her claims beyond her complaint constitutes abandonment of those claims."); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Keenan v. Tejeda,* 290 F.3d 252, 262 (5th Cir. 2002). Alternatively, this statute does not provide plaintiff with a separate and actionable claim. Rather, it furnishes potential avenues for other state claims, e.g. wrongful termination, or defamation. Because the state-based claims have been dismissed *supra*, those potential avenues are nonexistent here.

Moreover, plaintiff's claim in this instance is prescribed. *See Spears v. Jefferson Par. Sch. Bd.*, No. CIV.A. 13-6266, 2014 WL 2739407 (E.D. La. June 17, 2014) (holding plaintiff's claims were prescribed under the one-year limitation period for employment discrimination claims under state law.) As discussed *supra*, a claim for wrongful termination under Louisiana tort law is subject to a one-year prescriptive period that "commences to run from the day injury or damage is sustained." *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 874 (M.D. La. 2014), *aff'd sub nom. Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215 (5th Cir. 2015) (quoting *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99), 743 So. 2d 181, 187). As discussed earlier, La. Rev. Stat. § 23:303(D) sets a maximum prescriptive period of eighteen (18)

months for wrongful termination claims brought under the Louisiana Employment Discrimination Laws.

The wrongful termination occurred on October 20, 2017. The last possible date to file a claim was eighteen months thereafter, or April 20, 2019.  Because this action was untimely filed on July 9, 2019, the instant claim is dismissed

### D. The Americans with Disabilities Act (ADA)

The Americans with Disabilities Act prohibits an employer from discriminating against a "qualified individual with a disability on the basis of that disability." 42 U.S.C. § 12112(a). In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir.2013). This analysis first requires the plaintiff to establish a prima facie case of discrimination. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir.2009). To establish a *prima facie* discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir. 2014).  If the

plaintiff is successful, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reasons for terminating plaintiff's employment. *See Id.* Lastly, the burden shifts back to plaintiff to produce evidence from which a jury can conclude that defendant's articulated reason is pretextual. *See Id.*; *Cannon v. Jacobs Field Servs. N. am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

Defendant alleges plaintiff does not have a disability protected under the ADA. To support this argument, it points to plaintiff's deposition testimony in which she testified that she did not identify herself as disabled, nor did she inform anyone at Hiller that she had any medical condition during the application process. Rec. Doc. 31-10 at pg. 2. Defendant also claims plaintiff's ADHD and vertigo conditions are not "disabilities" under the ADA because neither limited her major life activities on or around her termination date. *Id.* at pgs. 6-10. The deposition testimony of plaintiff's physician, Dr. Schwarz, supports this argument. Defendant relies on Dr. Shwarz's admission that she never put any restrictions on plaintiff's activities when she treated her for ADHD. *Id.* Dr. Shwarz was asked during her deposition if plaintiff's ADHD substantially limited a life activity, and Dr. Shwarz responded by stating, "I mean, she was still working. She wasn't telling me that she was on the verge of losing her job or anything because of her ADHD." *Id.* Plaintiff's physician for the

vertigo condition, Dr. Spring, treated her for that condition during plaintiff's employment with Hiller. *Id.* Medical records contain visit notes taken by Dr. Spring on October 10, 2017 state, "Plaintiff did not proclaim to have vertigo," thereafter releasing plaintiff to return to work without any restrictions. Rec. Doc. 31 at pg. 9.   However, plaintiff relies on the Declaration of Dr. Spring and medical records from Metairie Sinus and Snoring Center in support of a paroxysmal vertigo condition that limits her normal activities. According to plaintiff, she is unable to walk or speak are limitations of major life functions, and thus, her vertigo is a disability under the ADA. *Id.*

Further, defendant argues plaintiff's termination resulted from her positive test for amphetamines and failing to provide BAL's medical review officer with a legitimate, negating explanation. See Rec. Doc. 31 at pg. 11-13. In response, plaintiff claims that the defendant was aware of her disability and terminated her employment because of it. Rec. Doc. 33 at pgs. 13-17.   She alleges Hiller's Human Resources Manager, Ms. Angela Smith, knew plaintiff suffered from vertigo. *Id.* Plaintiff also claims Ms. Smith had access to her personnel file that contained two positive tests for amphetamines dated June 29, 2015, and October 10, 2017. *Id.* Plaintiff relies on the deposition testimony of Ms. Smith that states plaintiff would have provided the prescription for Adderall to BAL's MRO for the June 29, 2015, pre-

employment drug test that came back positive for amphetamines. *Id.*
Additionally, Ms. Smith testified that plaintiff would not have
been hired had she not provided a prescription to BAL explaining
the positive result. *Id.* According to plaintiff, this evidence
supports the contention that Hiller was aware of her disability.
Rec. Doc. 33 at pgs. 13-17.

Defendant argues that even if the plaintiff can establish a
*prima facie* case of disability discrimination, her ADA claim still
fails because she cannot prove that the defendant's reason for
terminating her employment was pretextual. *Id.* However, plaintiff
presents evidence to support the claim that defendant's reason for
her termination was pretextual. Rec. Doc. 33 at pgs. 17-23.
Plaintiff claims Mr. Acreman rejected her attempt to give him the
amphetamine prescription during the termination meeting. *Id.* She
relies on language from the defendant's employee handbook, which
allegedly states that employees can provide prescriptions to their
supervisors. *Id.* Plaintiff also relies on the deposition testimony
of Hiller's former general manager, Mr. Kevin Sullivan, in which
Mr. Sullivan testified that "if an employee of Hiller Companies
presented a prescription for an amphetamine medication and tested
positive for amphetamine, that employee would be able to return to
work after showing proof of the prescription." Rec. Doc. 51. An
alleged expert, Mr. Andrew Easler, opined Hiller failed to follow
its Substance Abuse Policy when Ms. Smith failed to inform

plaintiff that she needed to contact BAL regarding the positive test result.[2] *See Rec. Doc. 56.*

We find that plaintiff has provided several pieces of evidence, including multiple deposition transcripts, declarations of co-workers, expert reports, and medical records, that show the existence of genuine issues of disputed material facts as to whether plaintiff's ADHD and vertigo are protected disabilities under the ADA, and whether the termination reason was pretextual. Therefore, summary judgment on the ADA claim is denied.

New Orleans, Louisiana this 3rd day of November 2021

SENIOR UNITED STATES DISTRICT JUDGE

---

[2] It is questionable whether the Policy language needs explanation if it is unambiguous. And moreover, no expert witness will be allowed from any side who appears to offer either legal conclusions or common-sense analysis that a reasonable juror can undertake.